**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | |
|---|---|
| S.P., a minor, and A.F., a minor, who sue by and through their parents, legal representatives and next friends Andrew Finley and Chantel Latreece Presley, his wife; et al.,   )<br>  Plaintiffs,   )<br>     v.   )<br>ERIN THOMPSON SPINKS; and STATE FARM AUTOMOBILE INSURANCE COMPANY,   )<br>  Defendants.   ) | CIVIL ACTION NO.<br>2:20cv995-MHT<br>(WO) |

**OPINION**

This lawsuit arises out of a car accident in which three people, including two minors, were injured. The plaintiffs include minors S.P. and A.F., who sue by and through their parents Andrew Finley and Chantel Latreece Presley; Finley and Presley are also plaintiffs. The defendants are Erin Thompson Spinks and State Farm Automobile Insurance Company. Presley and the minor plaintiffs, the three of whom were

injured in the accident, bring negligence and wantonness claims against Spinks, while Finley brings a claim against Spinks for loss of consortium. The plaintiffs also bring a claim for underinsured motorist coverage against Presley's insurance carrier, State Farm. The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The case is now before the court for consideration and approval of the settlement of the plaintiffs' claims. ]For the reasons below, the court will approve the settlement pursuant to the conditions set forth in the opinion.

## I. BACKGROUND

This case arises out of a June 12, 2020, accident. Plaintiff Presley and defendant Spinks were driving in opposite directions on Alabama Route 50 when Spinks

crossed the center line and hit Presley's car head on. Presley, A.F., and S.P. were injured in the accident.[1]

S.P., who was nine years old at the time of the accident, suffered devastating injuries, including "significant and multiple facial and skull base fractures; orbital blowout fracture; abdominal herniation; torn pelvic muscle; spinous process fracture, L2-L3; rhabdomyolysis; bowel injury; right leg ischemia/right iliac artery injury requiring through the knee amputation (6/16/2020); [and] above knee amputation (7/1/2020)." S.P. Guardian Ad Litem Report (Doc. 32) at 2. As a result of these injuries, he "suffers emotionally, requires a prosthetic leg and wheelchair[,] ... is incontinent of bowel and bladder, has kidney damage, [and] requires physical therapy and occupational therapy." *Id*. S.P. will require major medical care for the rest of his life.

---

1. Finley was not present.

A.F., who was two or three years old at the time of the accident, suffered a minor head injury that resulted in a bruise across the forehead and was released from the hospital the same day. *See* A.F. Guardian Ad Litem Report (Doc. 31) at 3. She has no lingering physical injuries. *See id*. at 5. However, shortly after the accident, she began experiencing night terrors and bed-wetting, as well as occasional angry outbursts. *See id*. at 3-4. The night terrors and bed-wetting have improved over the last year.

The parties have asked the court to approve settlement of the claims of the minor children. The parties have agreed to a single lump-sum settlement of $ 640,000. The total amount is based on the policy limits of two insurance policies, which the parties agree are unfortunately low given the injuries suffered, plus a contribution directly from the Spinks. The parties agree that the court should ultimately decide how to divide the settlement among the plaintiffs.

4

Because S.P. and A.F. are minors, the court appointed guardians ad litem to represent them with regard to the settlement. As the settlement is for one sum of money to be divided among the plaintiffs, there is a potential conflict among them. They "have 'zero sum' competing interests--that is, one plaintiff's gain could be another plaintiff's loss." *See Johnson v. United States*, No. 1:14CV220-MHT, 2016 WL 482034, at *2 (M.D. Ala. Feb. 8, 2016) (Thompson, J.). As a result, the court determined that the children should have different guardians ad litem. The court appointed Karen Laneaux, Esq., as guardian ad litem to represent the minor S.P., and Vonda Kay Bonham, Esq., as guardian ad litem to represent the minor A.F. The parties agreed that defendant Spinks is to pay the attorney's fees and expenses of the guardians ad litem, with those fees and expenses not to be subtracted from the amount of the proposed settlements.

The court received a written report from each guardian ad litem, and each spoke about their views of

the settlement at the pro ami hearing. The court also heard testimony from Presley, the minors' mother.

## II.  LEGAL STANDARD

Alabama substantive law governs the minor plaintiffs' claims because they were brought under state law. See *K.J. v. CTW Transportation Servs., Inc.*, No. 2:18cv19-MHT, 2018 WL 3656305, at *1 (M.D. Ala. Aug. 2, 2018) (Thompson, J.) ("[Alabama's state law requiring a fairness hearing for settling the claims of a minor plaintiff] is a rule of substantive law, which must be applied by federal courts sitting in diversity.") (citing *Burke v. Smith*, 252 F.3d 1260, 1266 (11th Cir. 2001)).

Under Alabama law, the court must "hold a fairness hearing before a minor plaintiff's case may be settled." *Casey v. Gartland*, No. 2:18cv890-MHT, 2020 WL 4470444, at *2 (M.D. Ala. Aug. 4, 2020) (Thompson, J.) (citing *Large v. Hayes by and through Nesbitt*, 534 So. 2d 1101, 1105 (Ala. 1988)) (further citations

6

omitted). At the hearing, the court must undertake "an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor." *Id.* at \*2 (quoting *Large*, 534 So. 2d at 1105) (internal citation omitted); *see also* William E. Shreve, Jr., *Settling the Claims of a Minor*, 72 Ala. Law 308 (2011). "Because a minor ordinarily cannot be bound by a settlement agreement, a fairness hearing and approval of the settlement are required in order for the settlement to be 'valid and binding' and to 'bar[] a subsequent action [by the minor] to recover for the same injuries.'" *Casey*, 2020 WL 4470444, at \*1 (alterations in original) (quoting Shreve, *Settling the Claims of a Minor*, *supra*, at 310) (internal citation omitted).

III. APPROVAL OF THE SETTLEMENT

Based on the representations made on the record, and the pleadings, reports, testimony, and argument at the pro ami hearing, the court will approve the

7

settlement, with certain modifications. Below, the court will first summarize its findings and then explain its reasoning, including the modifications that it will make to the settlement.

As stated earlier, the proposed settlement is for a lump-sum payment of $ 640,000 to settle all claims in the suit. Defendant Spinks will contribute the limits of her insurance policy, $ 500,000, plus $ 40,000 of her personal funds. Defendant State Farm will contribute its uninsured policy limits, $ 100,000.

While the overall amount, $ 640,000, is less than the plaintiffs, particularly S.P., could anticipate receiving from a jury given the severity of his injuries, S.P.'s guardian ad litem still opined that the settlement was in the child's best interest in light of the anticipated difficulty of collecting any larger judgment from Spinks. In her report, S.P.'s guardian ad litem recommended that he receive $ 600,000 of the total settlement. The guardian ad litem recommended that S.P.'s parents receive little or

8

nothing in the settlement in light of S.P.'s catastrophic injuries and resulting lifelong medical needs.

A.F.'s guardian ad litem also recommended that the court approve the settlement as in the child's best interest. She noted that A.F. had only a minor physical injury in the accident from which she quickly recovered, but that she should receive therapy for night terrors and bedwetting resulting from the trauma of the accident. In her initial report, she reported that she "would not object to" A.F. receiving 25 % of the total settlement. A.F. Guardian Ad Litem Report (Doc. 31) at 31. However, at the pro ami hearing, she testified that she was asking for only $ 20,000 for A.F., and that, even if the court were to give A.F. only $ 10,000, it would be sufficient to pay for any incidental, therapy-related costs going forward, because Medicaid would cover the cost of the therapy itself.

Plaintiffs' counsel requests a fee of 33 % of the remaining settlement funds after $ 2,627.62 in expenses are deducted.  This would amount to an attorney's fee of $ 210,332.88, leaving $ 427,039.50 to be split between S.P. and A.F.

S.P.'s medical expenses at Children's Hospital alone totaled almost $ 835,000.  *See id*. at 32.  The plaintiffs were insured through Andrew Finley's Blue Cross Blue Shield policy.  The amount of Blue Cross's subrogation lien for all plaintiffs was originally $ 467,203.55, including $ 316,667.00 for S.P., but the lien has been reduced to $ 212,457.46.  *See* S.P Guardian Ad Litem Report (Doc. 32) at 6.  The court understands that Finley--not S.P. and A.F.--is responsible for the debt to Blue Cross, as he is the contract holder, and that he is in Chapter 7 bankruptcy proceedings; and that, as a result, S.P. and A.F. will not have their settlement proceeds reduced as a result of the Blue Cross lien.

10

Medicaid has a lien for A.F.'s medical care for $ 1,424.50. *See* A.F. Guardian Ad Litem Report (Doc. 31) at 5.

The proposed settlement proceeds have been placed in a qualified settlement fund, of which Eastern Point Trust Company is the fund administrator. *See* Order (Doc. 42). If the settlement is approved, per the recommendation of S.P.'s guardian ad litem and plaintiffs' counsel, S.P.'s settlement proceeds will be placed in a special needs trust, which will cover those expenses that are not covered by Medicaid and Blue Cross, including for health, education, and quality of life. Further, a structured settlement will be used to grow his proceeds. No specific recommendation has been made as to how to protect A.F.'s settlement proceeds.

As stated, the total amount of the settlement, $ 640,000, is far lower than S.P. would have been likely to win at trial, and the amount is plainly insufficient to compensate S.P. for his catastrophic injuries and lifelong medical needs. Nevertheless,

11

based on the representation that it would be extremely difficult to collect a larger judgment from defendant Spinks, the court agrees with the guardians ad litem that the settlement is in S.P.'s and A.F.'s best interests, subject to the conditions and modifications set forth below.

As noted earlier, the parties have asked the court to decide how the settlement should be divided. A.F., whose physical injury was minor and temporary, needs therapy for the psychological trauma from the accident, although her guardian ad litem anticipates that the therapy will be covered by Medicaid. S.P., in contrast, suffered catastrophic injuries and emotional trauma, and faces of lifetime of serious medical needs and disabilities. In addition, S.P. will have significant financial needs just to accommodate his disabilities: he currently lives in a home that is not wheelchair accessible, and his mother does not have a car large enough to accommodate his wheelchair and his necessary hygiene supplies at the same time. In light

of the severity of S.P.'s injuries and immense future needs, the court finds that S.P. should receive the vast majority of the settlement proceeds.

The court must determine whether the requested attorney's fee is appropriate. It is unclear whether federal or Alabama law governs this determination. In any case, the factors the court may consider under either jurisdiction's law are quite similar. *Compare Peebles v. Miley*, 439 So. 2d 137, 140 (Ala. 1983) (listing 12 factors, including "the nature and value of the subject-matter of the employment; the learning, skill, and labor requisite to its proper discharge; the time consumed; the professional experience and reputation of the attorney; the weight of his responsibility; ... the measure of success achieved," plus whether a contingent or fixed fee arrangement is used, the nature and length of counsel's professional relationship with the plaintiff, the customary fee in the local area, whether the representation precluded other employment, and whether counsel faced any time

limitations imposed by the client or circumstances), *with Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)[2] (listing 12 factors including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

---

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

similar cases), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Under federal law, when determining an appropriate fee, the court begins by determining the "lodestar" figure, which is "the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community." *Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1161 (M.D. Ala. 2007) (Thompson, J.) (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). "In determining the lodestar, the court applies the 12-factor test set forth in *Johnson*[, 488 F.2d at 717-719,] and then proceeds to analyze whether any portion of this fee should be adjusted upwards or downwards." *Russell v. Ramirez-Roque*, No. 2:20CV150-MHT, 2020 WL 7028474, at *3 (M.D. Ala. Nov. 30, 2020) (quoting *Simpleville Music*, 511 F. Supp. 2d at 1161).

It is difficult to calculate a lodestar in the typical way here because plaintiffs' counsel does not

15

have a regular hourly rate, instead always working on a contingency basis, and admitted that he does not keep contemporaneous time records.  Counsel has attempted to reconstruct his hours and those of others in his office who worked on the case.  *See* Time Sheet (Doc. 38-1) (sealed).  Unfortunately, the court has had difficulty making use of the submission, as it does not provide a total number of hours for each person or for certain categories of work, may have overlapping categories, and provides hours for people whose job titles are not specified, and who may be support staff.  Moreover, counsel has not proposed an hourly fee for himself or his colleagues.

In any case, the court will use the factors set forth in the federal and state cases to assess the reasonableness of the fee.  Plaintiffs' counsel requests an attorney's fee of 33 % after subtraction of expenses from the total settlement, or $ 210,332.88, according to the court's calculation.  This would leave $ 427,039.50 to be split between the minor plaintiffs.

16

Several factors weigh in favor of granting the full fee requested. From the reconstructed time sheet, it is clear that plaintiffs' counsel and at least two other coworkers have put a significant amount of time into the case that could have been used on another case. According to the guardians ad litem, 40 % is the customary fee in the area for this type of case. Plaintiffs' counsel's usual fee is 45 % fee, but he has now reduced that to 33 % in light of the serious injuries S.P. suffered and the limited recovery, and reported that he would ask his firm if he could further reduce it to 30 %. Counsel negotiated a significant reduction in subrogation liens. He also arranged for the provision of expert services in the case for no charge, which resulted in significant savings to the plaintiffs in terms of expenses. Also, the case was taken on a contingent-fee basis, which generally entails some risk that the lawyer will not recoup expenses or fees.

17

Several factors fall on the other side of scale. While the case was taken for a contingent fee, counsel here advanced costs of only $ 2,627.62, a relatively small amount of financial risk for a firm such as his, which, plaintiffs' counsel represented, regularly handles cases worth hundreds of millions of dollars, reportedly on contingency. Moreover, given the circumstances of the accident and S.P.'s serious injuries, the risk of not recovering those expenses or any fees was small. Although significant time was spent by counsel and his firm on discovery, investigation, correspondence, and the like, the case did not go to trial or require any substantive-motions practice, which saved the firm a great deal of time. Finally, the amount of the settlement is low when considered in the context of S.P.'s immense suffering and future needs. Therefore, the court finds that the fee requested, $ 210,332.88, is excessive under the circumstances of this case. The court will reduce the attorney's fees to 25 %, or $ 159,343.10.

This will leave $ 496,066.90 for the plaintiffs, of which A.F. will receive $ 15,000, an amount that A.F.'s guardian ad litem agreed would be sufficient, and S.P. will receive $ 481,066.90. Presley and Finley will receive nothing in light of S.P.'s catastrophic injury, serious lifelong medical and other needs, and the limited funds available.

The parties did not address how A.F.'s money will be held. Because it likely would not be cost-effective to create a trust given the settlement amount, the court will order that the settlement funds be placed in a low-fee investment account from which withdrawals can be taken without penalty for purposes of A.F.'s mental-health care and education needs only. Plaintiffs' counsel and A.F.'s guardian ad litem shall identify and assist A.F.'s mother in setting up such an account for A.F.'s benefit. And A.F. shall receive control of the funds remaining in the account at the age of majority.

In sum, with the distribution of the settlement funds and the modifications stated above, the court finds the settlement is fair, just, and reasonable, and in the best interest of the minor plaintiffs.

An appropriate judgment will be entered.

DONE, this the 18th day of January, 2022.

                              /s/ Myron H. Thompson
                            UNITED STATES DISTRICT JUDGE